IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

TONY CRAWFORD                                                                                    PLAINTIFF

v.                                                                    CIVIL ACTION NO.3:10CV54-SA-DAS

BANNUM PLACE OF TUPELO                                                                   DEFENDANT

MEMORANDUM OPINION

Presently before the Court is Defendant's Motion for Summary Judgment [61]. For the reasons set forth below, the Court grants that Motion.

FACTUAL BACKGROUND

Defendant Bannum Place of Tupelo is a subsidiary of Bannum Incorporated, which is in the business of contracting with the Federal Bureau of Prisons to operate Residential Re-Entry Centers. These Re-Entry Centers are commonly referred to as halfway houses and are facilities designed to provide supervision and support for inmates who are preparing to reenter society after their release from prison. Plaintiff Tony Crawford was employed by Defendant at one such facility, Bannum Place of Tupelo, as a Counselor Aide.

In January 2009, however, Crawford was terminated from his employment with Bannum. Although the specific facts giving rise to the termination are contested between the parties, the pertinent and uncontroverted facts are as follows. On or about December 9, 2008, Crawford and a co-employee, Bobby Lester, became involved in a heated verbal altercation regarding the acceptability of allowing inmates to take smoke breaks after-hours. Pursuant to its contract with the Bureau of Prisons, Bannum was required to report all serious incidents of employee

misconduct to the Department of Justice. Crawford reported the incident to Cynthia Hill, Bannum Place of Tupelo Director, on December 10, 2008.[1] Also on December 10, Crawford was issued a written warning for allowing an inmate to go to a funeral without proper authorization on November 29, 2008.

On December 15, Crawford and Lester once again became engaged in a verbal altercation. This time, however, the argument was allegedly surreptitiously recorded by Crawford. Crawford reported the incident to Hill and informed her that he had taped the conversation. Hill decided to suspend both staff members pending an investigation into the incident and duly informed both employees. On December 23, Compliance Manager Cherie Summers submitted a memorandum recommending that both staff members be terminated from their employment with Bannum. Both Crawford and Lester were subsequently terminated on January 20, 2009.

Crawford initially filed the instant action *pro se* on June 17, 2010. On July 5, 2011, Plaintiff filed a first amended complaint, alleging wrongful termination in violation of public policy, negligent misrepresentation, estoppel and detrimental reliance, breach of the duty of good faith and fair dealing, and negligent infliction of emotional distress. Bannum now seeks summary judgment as to all of Crawford's claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of

---

[1] Crawford alleges in his briefing that Hill told him to drop the incident. The record, however, is devoid of any evidence regarding this aspect of the transaction. Plaintiff cites to Exhibit 19, Deposition of Tony Crawford, p. 68 in support of this factual allegation. Plaintiff's exhibit 19 ends at page 57.

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## DISCUSSION

*Employment Status*

Central to the dispute regarding Plaintiff's alleged wrongful termination is whether the Plaintiff was employed in an at-will capacity. Mississippi has followed the employment at-will

doctrine since 1858. Coleman v. Mississippi Emp't Sec. Comm'n, 662 So.2d 626, 628 (Miss.1995). Where there is either no employment contract or the contract fails to specify the length of the worker's employment, either party may terminate the employment at will. Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss. 1987). This means that the employee is entitled to quit or the employer is entitled to terminate the employee for a good reason, a wrong reason, or no reason at all. Slatery v. Ne. Mississippi Contract Procurement, Inc., 747 So.2d 257, 259 (Miss.1999).

In the case at hand, Crawford declines to argue that he had a contract specifying that he would be employed for a specific term. Additionally, the employee manual distributed to Plaintiff clearly stated:

> IT IS IMPORTANT TO NOTE THAT THIS HANDBOOK AND THESE POLICIES, PRACTICES AND PROCEDURES DO NOT CONSTITUTE AN EMPLOYMENT CONTRACT, NOR ARE THEY ANY GUARANTEE OF CONTINUED OR FUTURE EMPLOYMENT FOR ANY SPECIFIC PERIOD OR AT ANY SPECIFIC RATE OF PAY.

And, under the nature of employment section, the policy read:

> Employment with Bannum is voluntarily entered into, and you are free to resign at will at any time, with or without cause. Similarly, Bannum may terminate the employment relationship at will at any time, with or without notice or cause.

Thus, under the rule set forth in Perry, Crawford was an at-will employee. As such, he could be terminated for a good reason, a wrong reason, or no reason at all. Slatery, 747 So. 2d at 259. Absent an applicable exception to the general non-recourse doctrine for at-will employees, then, Crawford cannot sustain a cause of action against Bannum for an alleged wrongful termination.

*Wrongful Termination Exceptions for At-Will Employees*

Although recourse for an at-will employee is limited, the Mississippi Supreme Court has carved out two narrow exceptions to the employment at-will doctrine, thereby allowing an at–will employee to sue for wrongful discharge. On one hand, when an employer furnishes its employees a handbook or manual that sets forth procedures to be followed in reprimanding, suspending, or discharging its employees, then the employer is obligated to follow its own provisions, even in the absence of a formal employment contract. Bobbitt v. The Orchard, Ltd., 603 So. 2d 356 (Miss. 1992); Slatery, 747 So.2d at 259 (Miss. 1999). This Bobbitt exception to the at-will employment doctrine is qualified, however, by the principle that an employer may avoid creating a contract of employment by having its employees sign a disclaimer stating that the employees' continued employment at the firm remains at-will. See Byrd v. Imperial Palace of Mississippi, 807 So. 2d 433, 436–37 (Miss. 2001) ("holding that when there is a disclaimer which expressly provides that the employment relationship is at-will, the handbook in question does not create a contractual obligation that overrides the at-will doctrine."); Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So 2d 845, 848 (Miss. 2001) (same).

Additionally, where an employee is terminated because he or she has refused to participate in illegal activity or has reported the illegal activity of his employer to the employer or to anyone else, a suit for wrongful discharge can be brought, despite the at-will status of the employee. McArn v. Allied Bruce–Terminix Co., 626 So. 2d 603, 607 (Miss. 1993); Laws v. Aetna Finance Co., 667 F.Supp. 342, 348 (N.D.Miss.1987).

Plaintiff initially relies on the exception set forth in Bobbitt to argue that he was not an at-will employee. Specifically, Crawford argues that although his employee manual reiterated in

5

at least two different locations the at-will nature of his employment, a separate set of employee standards of conduct that was required to be distributed by the Bureau of Prisons was disseminated and that this second set of guidelines contained no such at-will disclaimer. Plaintiff contends that in order for such a disclaimer to be valid, it need appear on every set of procedures disseminated to the employee.

To sort out this dispute, closer inspection of the court's holding in Bobbitt is in order. There, the employee was provided with a detailed manual which set forth administrative procedures to be followed in the event of an employee's incompetence or misconduct. Bobbitt, 603 So. 2d at 357. The defendant, however, completely ignored such procedures and argued that the employee's at-will status precluded any requirement that the manual actually be followed. Id. The court disagreed, holding that when an employer disseminates a manual setting forth proceedings to be followed in the event of an employee infraction and there is nothing in the employment contract to the contrary, the employee is entitled to hold the employer to its word. Id. at 361. The Court cautioned, however, that a disclaimer reiterating the at-will nature of an employee's continued employment would likely be sufficient to preserve the typical at-will nature of the relationship. See id. ("had there been [in previous cases upholding discharge], again as in this case, no express disclaimer or contractual provision that the manual did not affect the employer's right to terminate the employee at will . . . we would have required the employer in both cases to abide by its own manual").

Although the court in Bobbitt did not address whether the disclaimer need appear in each set of standards distributed to the employee, subsequent cases have held that it need not be. For instance, in McCrary v. El Paso Energy Holdings, Inc., this Court addressed a markedly similar

6

situation. 209 F. Supp. 2d 649, 649 (N.D. Miss. 2002). There, the employee attempted to rely on a manual the Department of Transportation mandated that the defendant distribute in order to strip the at-will nature of the employment relationship. Id. at 650. Although the employee had signed an at-will disclaimer in both his application for employment and upon receipt of the employer's code of conduct, the plaintiff argued that the separate manual could be relied upon to transform the relationship out of its at-will status. Id. at 652. This Court disagreed, finding that the holding of Bobbitt was much narrower and that a valid disclaimer need not appear in each document to maintain the employment at will relationship. See id.; see also Lee v. Golden Triangle Planning & Dev. Dist. Inc., 797 So.2d 845, 848 (Miss. 2001) ("Nowhere in the Bobbitt decision did the Court state that an employer must use specific language in a disclaimer to preserve the at-will nature of employment. Where there is 'something' in the employee handbook disclaiming a contract of employment, the rule developed in Bobbitt does not apply").

Thus, in the case at hand, this Court finds that Bannum's disclaimers in the employee handbook sufficient to maintain the employment at will relationship. In at least two instances, the handbook reiterated the at-will nature of the Plaintiff's employment. It stated in capitalized letters:

> IT IS IMPORTANT TO NOTE THAT THIS HANDBOOK AND THESE POLICIES, PRACTICES AND PROCEDURES DO NOT CONSTITUTE AN EMPLOYMENT CONTRACT, NOR ARE THEY ANY GUARANTEE OF CONTINUED OR FUTURE EMPLOYMENT FOR ANY SPECIFIC PERIOD OR AT ANY SPECIFIC RATE OF PAY.

Additionally, the handbook read, "Employment with Bannum is voluntarily entered into, and you are free to resign at will at any time, with or without cause. Similarly, Bannum may terminate the employment relationship at will at any time, with or without notice or cause."

7

Therefore, as in <u>McCrary</u>, Defendant's disclaimer is sufficient to preclude application of the <u>Bobbitt</u> exception.

Having determined that the exception in <u>Bobbitt</u> is inapplicable to the employment at will framework here, the Court next considers whether the <u>McArn</u> exception allows a potential cause of action. In <u>McArn v. Allied Bruce-Terminix Co., Inc.</u>, the court carved out another public policy exception to the general employment at will doctrine of Mississippi, establishing that "an employee who is terminated because he or she has refused to participate in illegal activity or has reported illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer. 626 So. 2d 603, 607 (Miss. 1993). In order to meet the reporting exception, however, the plaintiff is required to prove that the conduct reported was actually criminal in nature and that the report was made based on the employee's subjective appreciation of the act's criminality. <u>Wheeler v. BL Development Corp.</u>, 415 F.3d 399, 402-04 (5th Cir. 2005) (finding activity at issue must be actually criminal as opposed to requiring a mere good faith belief that the conduct is criminal); <u>Jones v. Fluor Daniel Services Corp.</u>, 959 So.2d 1044, 1048 (5th Cir. 2007) (finding report insufficient when there was no evidence it was reported under the belief that the conduct was illegal).

For both the reporting and abstention prongs, the plaintiff need also present some evidence tending to establish causation between the reporting of the alleged misconduct and the decision process resulting in the discharge. <u>Dismuke v. City of Indianola</u>, 32 F. App'x. 126, * 4 (5th Cir. 2002) (citing <u>Hust v. Forrest Gen. Hosp.</u>, 726 So. 2d 298, 301-02 (Miss. 2000)). For instance, in <u>Kent v. Vicksburg Healthcare, LLC</u>, the court found summary judgment appropriate

8

where the court was unable to determine that the decision maker was aware of the report of illegal activity and, even if the decision maker had been aware, there was no evidence to show that the decision to terminate was based on the alleged reports. 2012 WL 1556511, * 15 (S.D. Miss. April 30, 2012).

The Plaintiff offers two alternative theories, each contingent on a distinct illegal act to which he, in turn, allegedly either reported or abstained from participating. The first theory raised by Plaintiff is that the threatening behavior of his co-worker constituted an illegal act under Mississippi law. According to the Plaintiff, the co-employee's threatening behavior constituted an assault and Crawford could therefore not be terminated in retaliation for reporting the alleged incident to his superiors. This theory, however, fails.

As is often problematic in grounding a McArn claim on a purported incident of assault, Crawford is unable to show that the alleged assault had anything to do with the subject business. See e.g. Hall v. Georgia Gulf Chemicals & Vinyls, LLC, 2010 WL 5333690, *2 (S.D. Miss. Dec. 21, 2010) (finding an assault to be too attenuated from the business of an employer to support a McArn claim); Bailey v. Cooper Lighting Inc., 2008 WL 1868568, * 3 (S.D. Miss. Apr. 24, 2008) ("alleged simple assault upon the plaintiff cannot be said to relate to or have 'actually had something to do with the business' of [defendant]."); Dancer v. Bryce Corp., 2006 WL 897964, *4 (N.D. Miss. Apr. 4, 2006) (finding assault unrelated to business). Although Crawford argues that the assault was related to the subject business on the basis that it was specifically prohibited by the applicable code of conduct, such an argument is unpersusasive.

In Bailey, the plaintiff attempted a similar argument to that offered here. 2008 WL 1868568 at *2. There, the plaintiff was allegedly assaulted by a co-worker when the co-worker

9

allegedly "touched her right breast in 'an inappropriate and unwelcomed manner.'" Id. The court was willing to assume that such conduct constituted an assault and had been reported by the plaintiff on such grounds, but nonetheless found that it would not support the application of McArn due to the fact that it was not related to the business of the company. Id. In doing so, it made apparent that determining that the illegal act has something to do with the business of the company requires more than a tangential relationship. Id.; see also Hall, 2010 WL 5333690 at *2 ("Mississippi law plainly does not support such an expansive view of the concept of 'related to the employer's business'").

In the case at bar, Crawford argues that the subject conduct necessarily related to the business of the defendant because it was specifically prohibited by the code of conduct governing the facility. The Court finds that such an expansive definition of relationship oversteps the narrow exception created in McArn. See Jones, 959 So. 2d at 1048 (finding that hostile language of supervisor did not have to do with subject business despite the fact that it was a breach of the peace); Bailey, 2008 WL 1868568 at *2 (determining that alleged instance of workplace sexual harassment did not have to do with business).

Particularly damaging to Plaintiff's argument is the fact that no courts appear to have considered whether a business prohibited certain conduct to determine whether it was related to the business. This Court finds it hard to believe that had the defendant company in Jones or Bailey prohibited such hostile behavior, the court would have found it related. It seems more reasonable that such conduct likely was prohibited, yet did not weigh into the court's determination. Crawford has failed to demonstrate that an alleged assault committed by a co-

employee had to do with Bannum's business and he cannot invoke McArn's limited exception on based upon the reporting of that incident.

Plaintiff's alternative theory based on the contention that he was discharged for refusing to participate in illegal conduct also fails. Plaintiff claims that by failing to report the incident to the Bureau of Prisons, Defendant violated 18 U.S.C. 1001(a) which, in pertinent part, forbids government contractors from concealing material facts. Plaintiff urges that this theory is supported by the fact that Bannum did not formally begin its internal investigation until approximately a week after the second altercation between Lester and Crawford and that there is no record that Crawford's initial report was forwarded to B.O.P. There is, however, absolutely no evidence to suggest that Crawford appreciated the potential illegality of failing to report this incident to the B.O.P. and, on that basis, refused to participate in this "cover-up." Such a theory is absent not only from the deposition testimony of the plaintiff, but is also absent from the Plaintiff's amended complaint, appearing for the first time in response to Defendant's motion for summary judgment. As made clear in Jones, the Plaintiff must report the activity because of its illegal nature. This Court thus determines that a Plaintiff must also choose to refrain from a given action because of its illegal nature. There is no evidence in the record to suggest that Crawford did so here.

*Negligent Misrepresentation, Estoppel, and Detrimental Reliance*

Under Mississippi law, in order to succeed on either a negligent misrepresentation or estoppel theory, the plaintiff must show that an action was taken with reasonable or justifiable reliance upon some representation of the defendant. See Horace Mann Life Ins. Co. v. Nunaley, 960 So. 2d 455, 461 (Miss. 2007) (requiring reasonable reliance upon the misrepresentation or

11

omission in regard to a negligent misrepresentation claim); Suddith v. Univ. of Southern Mississippi, 977 So. 2d 1158, 1180 (Miss. Ct. App. 2007) (requiring justifiable reliance upon defendant's representation for estoppel to apply). In Dancer, the plaintiff similarly argued that the defendant should have been estopped from terminating her for reporting the misconduct of co-employee because the handbook encouraged such practice. 2006 WL 897964 at *4. This Court, however, ruled that estoppel was inappropriate because the "[p]laintiff was never made a promise that the employee handbook would supercede the at-will employment doctrine." Id. at *5.

In the case at hand, Crawford alleges that the Defendant's employee manual instructed, "Bannum is eager to assist in the resolution of employee disputes and we will not discipline an employee for raising these types of concerns." The rationale of the Court's holding in Dancer is equally applicable to the situation at bar. The employee manual to which Plaintiff cites also affirmed the plaintiff's status as an at-will employee; establishing that he could be fired for a good reason, bad reason, or no reason at all. Plaintiff therefore had no reason to assume that the employment at will doctrine would somehow be overridden and his negligent misrepresentation and estoppel claims subsequently fail.

*Breach of the Duty of Good Faith and Fair Dealing*

Having determined that plaintiff was an at-will employee, his breach of the duty of good faith and fair dealing claim can be quickly disposed. It is well established under Mississippi law that an at-will employee is precluded from bringing such a cause of action. Hartle v. Packard Elec., 626 So. 2d 106, 110 (Miss. 1993); Porter v. Tunica Co., 2012 WL 113741, *6 (N.D. Miss. Jan. 13, 2012). As such, plaintiff's claim under this theory is also due to fail.

*Negligent Infliction of Emotional Distress*

Finally, Plaintiff's claim for negligent infliction of emotional distress is barred by the exclusivity provision of the Mississippi worker's compensation framework. Easterling v. AT&T Mobility, LLC, 824 F. Supp. 2d 729, 731 (S.D. Miss. 2011). Summary judgment is therefore granted in favor of the Defendant to this claim as well.

CONCLUSION

Upon review, the Court finds that the Plaintiff was an at-will employee of the Defendant and could be terminated for any reason. The Plaintiff has failed to set forth any evidence creating a genuine dispute of material fact as to whether the narrow exceptions set forth in McArn or Bobbitt should apply, and his claim for wrongful termination or retaliatory discharge are due to be dismissed. Additionally, Plaintiff's claims for negligent misrepresentation, detrimental reliance, estoppel, breach of the duty of good faith and fair dealing, and negligent infliction of emotional distress are also without merit and are due to be dismissed. Accordingly, Defendant's Motion for Summary Judgment is granted.

So ORDERED on this, the 8th day of January, 2013.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**